COLBY HABERDASHERS, INC. *vs.* THE BRADSTREET
COMPANY.

Suffolk.    December 12, 13, 1928. — May 28, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT & SANDERSON, JJ.

*Libel,* Privileged communication, Report by commercial agency.  *Ac-
tionable Tort. Corporation.  Pleading, Civil,* Declaration.  *Practice,
Civil,* Ordering verdict.

A corporation may maintain an action for libel.

A corporation may be found liable in an action of tort for a publication of
libellous matter written by its servant or agent in the course of the.
business in which it is engaged.

A communication sent in writing by a mercantile credit agency to its
subscribers, relating to a mercantile corporation and reading as follows:
"December 5, 1925.  Fire on second floor caused by an electric
flatiron which had been turned on after the store was closed, caused
small damage from fire.  It released four sprinklerhead and con-
siderable damage was caused by water.  Loss not estimated as yet.
Said fully covered by insurance," was not libellous.

In the circumstances, the communication above described was privileged.

A declaration in an action of tort for libel, setting out the facts as to such
communication, and adding, after the word "closed," the words
"(meaning said fire had been improperly set for improper motives)"
and after the word "insurance" the words "(when in fact no insurance
was carried)" would be demurrable.

Although the defendant did not demur to the declaration in the action
above described, it might take advantage of the fact that the pub-
lished statement was not of a libellous character by a motion that a
verdict be ordered in its favor at the close of the evidence; and such
a motion, having been made, should have been granted.

Even if, from evidence at the trial above described as to relations between
the plaintiff's treasurer and an agent of the defendant in charge of
obtaining information in the district where the plaintiff's establishment
was, it appeared that the agent hoped to harm the plaintiff by the
publication, there was nothing to justify a finding that the words he
used would be considered derogatory by any one except himself and
the plaintiff's treasurer; and the publication was not thereby made
actionable. .

It is the meaning to the world, to persons other than the person publish-
ing a writing and the person who was the subject of the writing, which

is material in determining whether the writing was a libel. Per WAIT, J.

Words that are not derogatory do not become libels because published maliciously.

TORT for libel. Writ dated January 9, 1926.

In the Superior Court, the action was tried before *Macleod*, J. Material evidence is stated in the opinion. At the close of the evidence, the defendant asked for and the judge refused to give the following rulings:

"2. That the statement alleged to have been published by the defendant is not libellous *per se.*

"3. That the plaintiff cannot recover in the absence of proof of special damage to it proximately resulting from the publication of the alleged libel."

"6. That there is no evidence in the case on which the jury could find that the plaintiff suffered actual pecuniary loss as the proximate result of any statement published by the defendant.

"7. That there is no evidence in the case on which the jury could find that the defendant published of and concerning the plaintiff any statement which was reasonably capable of any meaning derogatory to the plaintiff.

"8. That the language in the statement alleged to have been published by the defendant is not on its face ambiguous or susceptible of a double meaning.

"9. That the language in the statement alleged to have been published by the defendant is not reasonably capable of any meaning defamatory of the plaintiff.

"10. That the language of the statement alleged to have been published by the defendant, taking the words in their natural sense, does not fairly bear any meaning derogatory to the plaintiff."

"12. That the language in the statement alleged to have been published by the defendant is not as matter of law capable of the meaning sought to be ascribed to it by the innuendos in the declaration."

"1A. That the statement alleged to have been published by the defendant is not libellous even though special damages are shown."

There was a verdict for the plaintiff in the sum of $5,000, of which, by order of court, the plaintiff remitted all but $4,000. The defendant alleged exceptions.

*P. B. Buzzell,* (*C. B. Barnes, Jr.,* with him,) for the defendant.

*A. J. Berkwitz,* for the plaintiff.

WAIT, J. This was an action for libel. The declaration alleged that the plaintiff had a large mercantile trade and up to about December 10, 1925, had enjoyed good financial reputation, was able to procure a fair amount of credit and had a good volume of business at Taunton, Massachusetts; that about December 10, 1925, the defendant, whose business it is to disseminate information to subscribers with some of whom the plaintiff did business and enjoyed a large credit, falsely, maliciously, without taking proper precautions to ascertain the truth but in fact for the purpose of injuring the plaintiff published the following report:

626  "12/14/25. Rec. Colby Haberdashers, Inc. Herman Cohen, Pres. Jack I. London, Treas. Taunton, Mass. Bristol County. Main St. December 5, 1925. Fire on second floor caused by an electric flatiron which had been turned on after the store was closed, caused small damage from fire. It released four sprinklerhead and considerable damage was caused by water. Loss not estimated as yet. Said fully covered by insurance. 10–182. Dec. 10, 1925."

and that it caused such report to be broadcast and circulated. In the declaration, these words in parentheses, "(meaning said fire had been improperly set for improper motives)" were inserted after the word "closed," and the words in parentheses, "(when in fact no insurance was carried)," were inserted after "insurance." The declaration charged that the statement was intended to bring the plaintiff into contempt and ridicule and that it did so; whereby the plaintiff was injured. At the trial it was agreed that in fact insurance was carried. There was evidence that the plaintiff did business in a store occupied also by a corporation, Colby

Clothiers, upon the first floor of a building in Taunton.   The floor above was occupied by another corporation, Colby Toyland.   On December 5, 1925, an overheated electric flatiron on a bench in Toyland set fire to the wooden bench and to some toys beneath it.   The fire was quickly extinguished, but not before the heat had released four sprinkler heads in a sprinkler system, from which considerable water escaped to the floor below and caused damage to the stock in Colby Clothiers and Colby Haberdashers, Inc.   The report as published was sent from Taunton to the defendant's office at Boston, and, without examination or further consideration there, was sent out in the usual course of its business to subscribers, who, at any time previously, had asked information about Colby Haberdashers, Inc., or who, after December 10, inquired in regard to it.   The report was written by one York, the agent of the defendant in charge of obtaining information in the district which includes Taunton, whose duty it was to inform himself with regard to the standing of those doing business in the district and to prepare and send in reports thereon.   There was testimony, uncontradicted, but for the jury to accept or reject as they deemed proper, that all fires in business premises were reported.   There was contradicted evidence that soon after the plaintiff began business in Taunton in October, 1924, York had a heated discussion with London, treasurer of the plaintiff, who had refused information in regard to its credit; that York had threatened to make him trouble; and that, after the fire, some one with a voice like York's had telephoned to London that he told him that he would regret the earlier incident "And now is an opportunity to prove it to you."

It was properly taken for granted at the trial that the publication was privileged.   *R. J. Todd Co.* v. *Bradstreet Co.* 253 Mass. 138.   *Doane* v. *Grew*, 220 Mass. 171.   The plaintiff contended that York was actuated by malice in preparing and sending in .the report; that the defendant was responsible for his action, and that in consequence the privileged occasion was no justification for the publication. The defendant at the conclusion of the evidence moved that a verdict for the defendant be directed.   This motion was

denied. Certain of the defendant's requests for instructions were not given. The jury found for the plaintiff. The case is before us upon exceptions to the denial of the motion; to the refusal of the requests; and to certain rulings in the admission of evidence.

A corporation may maintain an action for libel. *Finnish Temperance Society Sovittaja* v. *Finnish Socialistic Publishing Co.* 238 Mass. 345, *South Hetton Coal Co. Ltd.* v. *North-Eastern News Association, Ltd.* [1894] 1 Q. B. 133, 141, *Mills* v. *W. T. Grant Co.* 233 Mass. 140; and may be liable for publications of libellous matter written by a servant in the course of the business in which it is engaged. *Fogg* v. *Boston & Lowell Railroad*, 148 Mass. 513.

The essential question is whether the statement was capable of a derogatory meaning on its face or is to be given such a meaning in consequence of any facts shown in the evidence. We have no doubt that the declaration was demurrable. The words set out in their ordinary meaning are not derogatory. They do not contain an implication that the plaintiff has acted in any improper way. An electric flatiron may readily become overheated in the absence of any incendiary intention; and may perfectly innocently be turned on after a store has been closed. A fire so caused does not imply incendiary action to defraud an insurance company. The innuendo "(Meaning said fire had been improperly set for improper motives)" cannot add anything to the meaning of the words. *Bloss* v. *Tobey*, 2 Pick. 320. *Carter* v. *Andrews*, 16 Pick. 1, 5. *Tebbetts* v. *Goding*, 9 Gray, 254. *Goodrich* v. *Hooper*, 97 Mass. 1, 5. *Brettun* v. *Anthony*, 103 Mass. 37. *Young* v. *Cook*, 144 Mass. 38, 41. No facts are set out which show that in consequence of the circumstances attending their publication the words were intended to convey or would or could be understood to convey a derogatory meaning not on their face. *McCallum* v. *Lambie*, 145 Mass. 234, 237. *Commonwealth* v. *Szliakys*, 254 Mass. 424, 426.

No demurrer was filed. The evidence failed to justify findings of the facts material to a cause of action. That may be taken advantage of by motion for a directed verdict. *Clay* v. *Brigham*, 8 Gray, 161, 162; *Twombly* v. *Monroe*,

136 Mass. 464, 469; *Boynton* v. *Shaw Stocking Co.* 146 Mass. 219.

Even if we assume that York intended and hoped to hurt the plaintiff, there is nothing to justify a finding that the words he used would be considered derogatory by any one except himself and London. No one else knew of any feeling which might give a sting to words otherwise harmless. It is the meaning to the world, to persons other than speaker and subject of the speech, which is material in libel or slander. *Carter* v. *Andrews, supra. Brettun* v. *Anthony, supra,* page 40.

Words that are not derogatory do not become libels because published maliciously. *Boynton* v. *Shaw Stocking Co., supra.*

There was no evidence which justified a finding that the words were libellous, and it was the duty of the court so to rule. It is not necessary to consider the other exceptions. As no libel was published, we think that under G. L. c. 231, § 122, judgment should enter for the defendant.

*Exceptions sustained.*

*Judgment for defendant.*